UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GRIMM SCIENTIFIC INDUSTRIES,
INC.,

        Plaintiff,                    Case No. 2:22-cv-1477
                                           JUDGE EDMUND A. SARGUS, JR.
    v.                                   Magistrate Judge Kimberly A. Jolson

FOAM SUPPLIES, INC. et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand the case to state court (ECF No. 6) and Defendant's Motion for Surreply (ECF No. 13). For the reasons set forth below, Defendant's Motion for Surreply is **GRANTED** and Plaintiff's Motion to Remand is **GRANTED**.

### I.    Background

Plaintiff Grimm Scientific Industries, Inc. ("GSI") designs and manufactures products including a CRYOTherm hydrotherapy system. (Compl. ¶ 6, ECF No. 1-3.) Starting in December 2017, GSI used foam insulation from Defendant Foam Supplies, Inc. ("FSI") to manufacture eighty-seven CRYOTherm hydrotherapy systems. (*Id.* ¶¶ 7, 20.) According to the Complaint, FSI, by and through its agent, Mr. Underwood, represented to GSI that its foam, called Ecomate foam, would not negatively affect components contained in the body of CRYOTherm hydrotherapy systems such as the copper refrigeration lines. (*Id.* ¶ 17.) Between May 2020 and October 2021, however, twenty-two of GSI's clients reported that the CRYOTherm systems were leaking refrigerant. (*Id.* ¶¶ 22–27.) GSI alleges that FSI's Ecomate foam corrodes the copper components

1

in the CRYOTherm systems. (*Id.* ¶ 30.) GSI estimates that it will have to replace sixty-five units containing FSI's Ecomate foam. (*Id.* ¶ 32.)

On December 2, 2021, GSI filed an action against FSI in the Washington County Court of Common Pleas asserting breach of contract, breach of warranty, fraudulent inducement, fraud, and negligence claims. (*See generally id.*) Defendant FSI removed this case to federal court on March 11, 2022. (Notice of Removal, ECF No. 1.) Defendant contends there is diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Ohio and seeks more than $75,000, and FSI, the only properly served defendant, is a citizen of Missouri. (*Id.* ¶ 1.) According to FSI, co-defendant James Underwood, a citizen of Ohio, was not properly served or he was fraudulently joined to the action. (*Id.* ¶ 2.)

Plaintiff GSI filed the instant Motion to Remand to State Court (ECF No. 6) on March 16, 2022. Plaintiff contends that there is no diversity jurisdiction because in-state defendant James Underwood, a citizen of Ohio, was properly served on March 8, 2022. FSI filed a response in opposition to the motion to remand arguing that Mr. Underwood was not properly joined or was fraudulently joined to the case (ECF No. 8). GSI filed a reply (ECF No. 12). FSI then filed a motion for leave to file a surreply (ECF No. 13) and an accompanying surreply (ECF No. 14).[1] The motions are ripe for review.

## II. Standard

"[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "[A]ny civil action brought in a State court of

---

[1] Whether to permit a party to file a surreply is a matter left to the trial court's discretion. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014). Here, the Court exercises its discretion in granting FSI's motion for leave to file a surreply; as such, the Court has taken FSI's surreply into consideration in deciding GSI's motion to remand.

which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A defendant who removes a case to federal court carries the burden of establishing federal jurisdiction. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citations omitted).

### III. Analysis

GSI and FSI do not dispute that they are diverse parties and that the amount in controversy exceeds $75,000. Instead, FSI submits that the case is properly removed because James Underwood, a co-defendant and non-diverse citizen of Ohio, (1) did not receive proper service of process and is therefore not a party to the case; (2) in the alternative, did not receive service of process before FSI removed the case to federal court; or (3) in the alternative, was joined fraudulently by Plaintiff to prevent removal. For these reasons, FSI argues, GSI's motion to remand to state court should be denied.

#### A. Improper Service

The Certified Mail Receipt indicates that process was served on March 8, 2022, to Mr. Underwood's residential mailbox. It is undisputed that neither Mr. Underwood nor anyone residing at his residence signed the Certified Mail Receipt. Instead, both parties infer that the post office agent signed the receipt upon delivery to the mailbox. (*See* Pl.'s Reply at 2, ECF No. 12; Def.'s Resp. at 3, ECF No. 8.) The Certified Mail Receipt was filed with the state court on March 11, 2022, at 3:13 p.m. (Certified Mail Receipt, ECF No. 6-1.)

Defendant FSI contends that Mr. Underwood did not receive proper service of process because neither Mr. Underwood nor any adult living in his residence signed the Certified Mail Receipt. (Def.'s Resp. at 2–3, ECF No. 8.) Plaintiff GSI counters that the postal employee's

3

signature on the Receipt is sufficient to effect proper service of process on Mr. Underwood. (Pl.'s Mot. at 2, ECF No. 6.) The Court agrees with FSI.

Ohio Civil Rule of Procedure 4.1(A)(1)(a) governs proper service of process by a clerk via United States certified or express mail:

> Evidenced by return receipt signed by *any person*, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules. The clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing at the address set forth in the caption or at the address set forth in written instructions furnished to the clerk as certified or express mail return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered.

Ohio R. Civ. P. 4.1(A)(1)(a) (emphasis added). "The plaintiff bears the burden of obtaining proper service on a defendant." *Beaver v. Beaver*, 2018 WL 5778951, ¶ 9 (Ohio Ct. App. 2018). Compliance with Ohio Civil Rule of Procedure 4.1 creates a rebuttable presumption of proper service. *State Auto Ins. of Ohio v. Wilson*, 2020-Ohio-4456, ¶ 7 (Ohio Ct. App.). "To rebut the presumption of proper service, 'the other party must produce evidentiary-quality information demonstrating that he or she did not receive service.'" *Progressive Direct Ins. Co. v. Williams*, 186 N.E.3d 337, 340 (Ohio Ct. App. 2022) (citations omitted). Such evidentiary-quality information may take the form of an improperly signed certified mail return receipt or an affidavit from the addressee indicating improper service. *See Boggs v. Denmead*, 115 N.E.3d 35, 42 (Ohio Ct. App. 2018) (rebutting presumption of proper service with, inter alia, the return receipts with illegible signatures and an affidavit from the defendant stating he did not sign the receipts and did not recognize the receipt signatures).

The question presented here is whether "return receipt signed by any person" includes signatures of post office delivery agents, or whether a signature is required by a person *receiving* rather than delivering process. Ohio case law establishes that "any person" should be understood

4

broadly. *See Indian Creek Condo. Prop. Owners Ass'n v. Team Equity*, 2019-Ohio-4876, ¶ 27 (Ohio Ct. App.) ("Valid service of process is presumed when the envelope is received by any person at the defendant's residence; the recipient need not be the defendant or an agent of the defendant."). However, several courts have recently addressed this issue, finding that the broad scope does not extend to delivery agents. In *Finnell v. Eppens*, No. 1:20-cv-337, 2021 U.S. Dist. LEXIS 110389, at *14 (S.D. Ohio 2021), the Court noted that "any person" in Ohio Civ. R. 4.1(A)(1)(a) likely applies to "others residing…at the indicated address, and not necessarily to mail carriers who deliver the materials to the address—COVID-19 pandemic notwithstanding." The Court also noted that although the Southern District of Ohio loosened its service of process requirements because of Covid-19, the Court was "unable to locate any specific Ohio law implementing a modification to the signature requirement based on COVID-19." *Id.* at 15–16.

*Finnell's* holding is not unique. In *CUC Properties VI, LLC v. Smartlink Ventures, Inc.*, the Ohio First District Court of Appeals found that a mail carrier's "Covid 19 or "C19" mark on the certified mail receipt does not constitute a valid signature under Civ.R. 4.1(A)(1)(a) because "[a]llowing the mail carrier to unilaterally substitute himself as an agent of the intended recipient frustrates the very purpose of…substantiat[ing] that someone actually *received* the summons and complaint—and the notations in this case fail to offer that assurance." 178 N.E.3d 556, 561 (Ohio Ct. App.) (emphasis in original).

And in *Cincinnati Ins. Co. v. Hall*, the Ohio Second District Court of Appeals stated in dicta, "[a]bsent a stipulation from [plaintiff] or other evidence establishing that . . . a mail carrier in fact signed the return receipts, they are at least minimally sufficient, on their face, to create a rebuttable presumption of valid service." 2022-Ohio-1112, ¶ 22 (Ohio Ct. App.). This implies that

if there was evidence establishing that a mail carrier signed the return receipts, then there would not be a rebuttable presumption of valid service and service would be improper.

GSI instead argues that this service is proper because it complies with this Court's General Order concerning Covid-19:

> Accordingly, given the significant risk associated with COVID-19 and the severity of jeopardy posed to the public, it is hereby ORDERED that service of process may be evidenced by delivery of certified mail or express mail by the USPS as reflected by notations of "COVID," "COVID-19," or other similar notations consistent with the USPS' temporary modifications to the certified mail delivery procedures on the receipt of confirmation of delivery. Service in this manner shall be deemed to be perfected unless otherwise challenged.

S.D. Ohio Gen. Order No. 20-39 (December 29, 2020). In this case, however, GSI's service of process must comply with the Ohio Rules of Civil Procedure or rules set by state courts because the issue is whether Mr. Underwood received proper service of process in state court.[2] Although service may have comported with this Court's Covid-19 Order, that alone does not indicate that it was proper under Ohio procedures. Therefore, the Court finds that service of process in this case did not comply with Ohio Civ. R. 4.1. The documentary evidence indicates that the postal agent signed the return receipts, and Mr. Underwood's affidavit states that he never received service of process and neither he, nor anyone else at his residence, signed for any materials related to this litigation. These facts, standing against the legal backdrop discussed above, lead the Court to conclude that Mr. Underwood has not yet been properly served.

### B. Snap Removal

Given that GSI has not properly served Mr. Underwood, FSI contends that complete diversity exists between the parties based on "snap removal," where the case is removed when all

---

[2] The Court reviewed the local rules for the Court of Common Pleas, Washington County, Ohio, and none of the rules therein addressed the facts presented here. *See Local Rules*, WASHINGTON COUNTY, OH, (https://www.washingtongov.org/266/Local-Rules) (last visited Oct. 26, 2022).

*properly* joined defendants have diverse citizenship even though an unserved defendant does not have diverse citizenship. In response, GSI argues—and the Court agrees—that snap removal is not appropriate in this case.

The Court begins by noting that Congress's strong disfavor of removal requires courts to construe removal statutes narrowly to limit federal court jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) ("[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed."). The defendant carries the burden of proving its right to a federal forum, and the court should resolve all doubts in favor of remand. *Ethington v. GE*, 575 F. Supp. 2d 855, 860 (N.D. Ohio 2008).

FSI argues that removal is proper based on the plain language of 28 U.S.C.S. § 1441(b)(2), which reads in pertinent part:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought.

28 U.S.C.S. § 1441(b)(2) (emphasis added). Arising from this statute is the "forum defendant rule," which prohibits removal on the basis of diversity "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Gordon v. Goodyear Tire & Rubber Co.*, No. 5:21-cv-1097, 2022 U.S. Dist. LEXIS 673, *14 (N.D. Ohio 2022). Given the plain text of this statute, FSI argues, a defendant may remove an action so long as the forum defendant (in this case, Mr. Underwood) has not been "properly joined and served" at the time of removal. Thus, FSI continues, because GSI has not properly joined and served Mr. Underwood, a straightforward reading of § 1441(b) permits removal. In addition, FSI directs the Court's attention to dicta from both the Sixth Circuit and this Court suggesting snap removal is permissible. (FSI Opp'n, ECF No. 8, pp. 4–5 (citing *McCall v. Scott*, 239 F.3d 808, 813

n.2 (6th Cir. 2001) and *Kim v. Sung Kwon Lee*, No. 1:21-cv-613, 2021 U.S. Dist. LEXIS 225544 (S.D. Ohio 2021)).)

GSI, on the other hand, argues that FSI's reliance on *McCall* is misplaced and that snap removal is inconsistent with Congressional intent. GSI accurately notes that the *McCall* footnote endorsing snap jurisdiction is dicta. (GSI Reply, ECF No. 12, at 11).[3] And GSI is not alone in dismissing the footnote. *See, e.g.*, *Allied P&C Ins. Co. v. Dowler*, No. 1:21-cv-00119, 2021 U.S. Dist. LEXIS 180146, at *6 n.7 (S.D. Ohio 2021) ("The Court acknowledges, but is not bound by, the dicta in *McCall*") (collecting cases labeling the *McCall* footnote dicta); *NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp. 2d 964, 969 n.3 (N.D. Ohio 2009) (referring to the *McCall* footnote as dicta, noting also that "dicta is not binding precedent"); *Hassan v. URS Midwest, Inc.*, No. 5:18-cv-1227, 2018 U.S. Dist. LEXIS 197832, *4-5 (N.D. Ohio 2018) ("The language from *McCall* relied upon by [the defendant] has been more recently identified as non-controlling dicta that is inconsistent with the policy underlying the forum defendant rule.").

The language from this Court upon which FSI relies is equally nonbinding. In *Kim*, the Court merely stated that "the Sixth Circuit has appeared to indicate that [snap removals] are permissible," and then noted soon after that "the Court need not get to the bottom of this issue" because the Court could dispose of the motion to remand without addressing snap removal. *Kim*, 2021 U.S. Dist. LEXIS 225544, at *7-9. The Court's observation was gratuitous and inconsequential to the case before it. *See Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) ("If the statement is not necessary to the outcome, it is dicta and nonbinding.").

---

[3] The *McCall* footnote provides that "[w]here there is complete diversity of citizenship, . . . the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." *McCall*, 239 F.3d at 813 n.2 (emphasis in original).

The better course of action—and the course this Court will take—is to follow in the footsteps of a substantial number of the District Courts within the Sixth Circuit. The Court begins by turning to the Northern District of Ohio's opinion in *Ethington*, which contains a particularly enlightening explanation of the Congressional intent underpinning § 1441(b). 575 F. Supp. 2d 855 (N.D. Ohio 2008).[4] The purpose behind the "joined and served" language in § 1441(b) is "to prevent gamesmanship by plaintiffs, who might name an in-state defendant against whom he or she does not have a valid claim in a complaint filed in state court to defeat otherwise permissible removal by the non-forum defendant(s)." *Id.* at 861 (citing, *inter alia*, *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.")).

In *Ethington*, the defendant rushed to remove the newly filed state court action before the plaintiff could perfect service—a tactic "turn[ing] Congressional intent on its head." *Id.* at 862. That is, "[t]o apply the 'properly joined and served' language literally where an in-state defendant removes, would promote the same type of litigant gamesmanship that the rule seeks to limit, and thus violate the clear purpose of the legislative provision." *Id.* (quoting *Brown v. Organon Int'l, Inc.*, Civil Action No. 07-3092 (HAA), 2008 U.S. Dist. LEXIS 55490, at *14 (D.N.J. 2008)). Furthermore, because a savvy defendant monitoring state dockets would be able to file for removal before service is perfected, allowing snap removal would "eviscerate a plaintiff's well-established right to choice of forum, by essentially precluding a plaintiff from ever being able to litigate a case in the defendant's own home state courts if the defendants are sophisticated litigants." *Id.*

---

[4] *See also Champion Chrysler Plymouth v. Dimension Serv. Corp.*, No. 2:17-cv-130, 2017 U.S. Dist. LEXIS 26141 (S.D. Ohio 2017) (M.J. Kemp) (providing a thorough recitation of the history of snap removal along with principled critiques of the doctrine).

9

Accordingly, the *Ethington* court declined to allow snap removal by an unserved forum defendant, holding that "applying the plain language of § 1441(b) would produce a result demonstrably at odds with Congressional intent underpinning the forum defendant rule, and specifically with the 'properly joined and served' language." *Id.* at 864.

This Court acknowledges that the facts in *Ethington* are not identical to those in the instant case. Specifically, *Ethington* involved a single defendant from the forum state filing for removal before being served, whereas FSI is a non-forum defendant that removed before the forum defendant (Mr. Underwood) had been properly joined and served. But this is a distinction without a difference. The rationale undergirding *Ethington* is equally applicable in the present case. *See NFC Acquisition, LLC*, 640 F. Supp. 2d at 969 (rejecting non-forum defendant's argument that *Ethington* is distinguishable on the basis that a forum defendant, rather than a non-forum defendant, filed for removal; also noting that "[n]othing in the text of § 1441(b), however, makes the forum defendant rule dependent on which defendant filed for removal"); *see also Hassan*, 2018 U.S. Dist. LEXIS 197832 (granting plaintiff's motion to remand where non-forum defendant filed for removal; referring to *NFC Acquisition* and *Ethington* as the "better precedent in this court" before concluding that a literal application of § 1441(b) would contravene the forum defendant rule and its underlying policy); *Arrington v. Medtronic, Inc.*, 130 F. Supp. 3d 1150, 1157 (W.D. Tenn. 2014) (referring to non-forum defendant's removal prior to service upon forum defendant as "precisely the type of tactic[] and gamesmanship the courts have addressed and have found to be improper").

Here, FSI, a non-forum defendant, filed its notice of removal on March 11, 2022—the same day that GSI attempted to serve Mr. Underwood, a forum defendant, via certified mail. FSI has not directed the Court's attention to any facts suggesting that this case is materially distinct from

10

the numerous cases in this district finding snap removal inappropriate. Therefore, upon careful review of these factually similar cases and the law in the Sixth Circuit, and with an interest in effectuating Congressional intent, the Court finds that FSI's removal of this case from state court to federal court was improper.

    **C. GSI Did Not Fraudulently Join Mr. Underwood.**

FSI also argues that GSI fraudulently joined Mr. Underwood, a forum defendant, to this action in an attempt to defeat removal on diversity grounds. Under well established Sixth Circuit law, "fraudulent joinder of a nondiverse party will not defeat removal on diversity grounds." *Tennial v. Bank of Am., N.A.*, No. 17-6377, 2020 U.S. App. LEXIS 12009, at *5 (6th Cir. 2020). FSI has the burden of proving fraudulent joinder, and to do so, FSI "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* (citing *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). But if GSI has "a colorable basis" for predicting that it may recover against Mr. Underwood, then this Court must remand this action to state court. *See id.* When deciding fraudulent joinder allegations, the Court applies "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). "All doubts as to the propriety of removal are resolved in favor of remand." *Id.*

Upon review of the record, FSI has failed to carry its burden. GSI alleges the following claims against Mr. Underwood: fraudulent inducement, fraud, and negligent misrepresentation. (Compl. ¶¶ 47–54, ECF No. 1-3.) In arguing that GSI fraudulently joined Mr. Underwood to this action, FSI ignores the claims GSI *did* make against Mr. Underwood, instead focusing on claims GSI did *not* make. In FSI's opposition to GSI's motion to remand, FSI suggests that GSI's

Complaint solely sets forth product liability claims under R.C. 2307.71(A)(13). (ECF No. 8, pp. 5–7.) Under the product liability statute, FSI argues, GSI cannot make out a colorable claim against Mr. Underwood, and therefore Mr. Underwood was fraudulently joined.

FSI, however, misconstrues GSI's Complaint. As set forth in the Complaint, Mr. Underwood allegedly met with the president of GSI and reviewed GSI's manufacturing process, which led Mr. Underwood to recommend that GSI adopt FSI's Ecomate product to improve GSI's manufacturing process. (Compl. ¶¶ 15–16, ECF No. 1-3.) During this meeting, Mr. Underwood allegedly represented that Ecomate would have no negative effect on GSI's CRYOTherm hydrotherapy systems. (*Id.* at ¶ 17.) GSI then alleged that Mr. Underwood's representations were material to GSI's decision to change suppliers and use FSI's Ecomate product, which ultimately led to GSI's injuries. (*Id.* at ¶¶ 18–19, 30–32.) These allegations, when reviewed under the "lenient" standard applicable to fraudulent joinder, provide "a colorable basis" for predicting that GSI may recover against Mr. Underwood.[5] Accordingly, the Court concludes that GSI's joinder of Mr. Underwood was not fraudulent.

---

[5] *See Bender v. Logan*, 76 N.E.3d 336, 352 (Ohio 4th Dist. Ct. App. 2016) ("A successful fraudulent inducement claim requires clear and convincing proof of each of the following elements: '(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.'"); *Pepin v. Hansing*, 2013-Ohio-4182, ¶ 12 (Ohio 4th Dist. Ct. App.) ("The elements of fraud are generally stated as follows: (1) a representation or, when a duty exists to disclose, concealment of a fact; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance."); *Woodyard v. Jim Walter Homes, Inc.*, 1997 Ohio App. LEXIS 5038, at *10 (Ohio 4th Dist. Ct. App. 1997) (the elements of negligent misrepresentation are "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information").

### IV. Conclusion

For the reasons set forth above, Defendant's Motion for Surreply (ECF No. 13) is **GRANTED**, Plaintiff's Motion to Remand (ECF No. 6) is **GRANTED** and this case is remanded to the Washington County Court of Common Pleas.

The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**11/1/2022**　　　　　　　　　　　　　　　　　s/Edmund A. Sargus, Jr.
**DATE**　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**